**Mary WELCH, Plaintiff-Appellee-Cross Appellant,**

v.

**The UNIVERSITY OF TEXAS AND ITS MARINE SCIENCE INSTITUTE, Defendant-Appellant-Cross Appellee.**

**No. 80–2019**
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.*
Unit A

Oct. 15, 1981.
Rehearing Denied Nov. 17, 1981.

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

Lucius D. Bunton, Jr., Asst. Atty. Gen., Austin, Tex., for defendant-appellant-cross appellee.

Bill Blackburn, Corpus Christi, Tex., for plaintiff-appellee-cross appellant.

Before GEE, GARZA and TATE, Circuit Judges.

GARZA, Circuit Judge:

Mary Welch brought this Title VII[1] suit against her former employer, the University of Texas, alleging discriminatory discharge from employment. After a bench trial, the district court rendered judgment for the plaintiff. Defendant, the University of Texas, appeals the judgment on the grounds that the lower court erred in finding (1) plaintiff was forced to resign, (2) plaintiff was constructively discharged, and (3) defendant had a duty to inquire regarding the voluntary nature of plaintiff's resignation. Plaintiff cross-appeals charging error in the amount of damages and attorney fees ordered by the district court. Finding all contentions without merit, we affirm.

1. 42 U.S.C. § 2000e et seq.

Mary Welch was hired by the University of Texas in 1973 as a research assistant in the Marine Science Institute at Port Aransas, Texas. She was employed at the laboratory until August 31, 1976, when she resigned employment as a result of occurrences which are the basis of this suit. After exhausting all administrative remedies,[2] Welch filed suit against her former employer, alleging constructive discharge from employment in violation of Title VII of the Civil Rights Act of 1964. One year prior to her resignation, her supervisor informed her that when she received the doctorate degree on which she was working, she would be unable to work for him because he did not want a woman doctor in his employ. After she received the Ed.D. degree in 1976, he spoke with her again and after expressing his opinion that she was now overqualified for her job, demanded to know when she was leaving. In light of past dealings with this individual, Welch responded that since it was obvious he did not want a woman with a doctorate working for him, she would leave August 31st whether or not she located other employment.

■ When she resigned from the position of research assistant, Welch completed a separation from employment form as required by the University of Texas. On that form, she indicated that her termination was involuntary and clearly stated that she had been forced to resign by her supervisor. Despite the fact that evidence demonstrates her competence as an employee, neither her supervisor nor any member of the personnel department contacted her to deny this allegation. Furthermore, the director of personnel was aware of her belief that she was being terminated one month prior to her actual departure but did nothing to correct this perception.

In order to establish a prima facie case of sex discrimination under Title VII, plaintiff must first prove by a preponderance of the evidence that (i) she is a member of a protected class, (ii) she was qualified for the job from which she was discharged, (iii) she was discharged, and (iv) after the discharge the employer filled the position with a non-minority.[3] *Marks v. Prattco, Inc.*, 607 F.2d 1153, 1155 (5th Cir. 1979) The district court found that plaintiff successfully presented a prima facie case of sex discrimination.

The defendant's first two points of appeal can be jointly discussed because they both dispute the district court's finding that Welch was constructively discharged. In holding that the plaintiff was constructively discharged, the district court utilized the standard set by *Young v. Southwestern Savings Association*, 509 F.2d 140 (5th Cir. 1975):

> [I]f the employer deliberately makes conditions so intolerable that the employee is forced into an involuntary resignation, then the employer has encompassed a constructive discharge and is as liable for an illegal conduct involved therein as if it had formally discharged the aggrieved employee.

*Id.* at 144. The standard to be met in determining whether an employee was forced to resign was further clarified by *Bourque v. Powell Electrical Manufacturing Co.*, 617 F.2d 61, 65 (5th Cir. 1980). A constructive discharge will be found where

> working conditions would have been so difficult that a reasonable person in the employee's shoes would have felt compelled to resign.

*Id.*, citing *Alicea Rosado v. Garcia Santiago*, 562 F.2d 114, 119 (1st Cir. 1977).

■ Upon review of the finding of constructive discharge, we must initially comment that a district court's findings of fact will not be set aside unless they are adjudged "clearly erroneous." As the Fifth Circuit recently reiterated in *Wilkins v.*

---

**2.** Welch received a "Right to Sue Letter" from the United States Department of Justice on October 13, 1978.

**3.** Welch was replaced by a woman. This individual had a bachelor's degree but not a doctorate degree. Therefore, the fact that plaintiff was replaced by a woman does not negate her claim of sex discrimination because her replacement did not have a doctorate. *See Harper v. Thiokol Chemical Corp.*, 619 F.2d 489, 493 (5th Cir. 1980).

*University of Houston,* 654 F.2d 388 (5th Cir. 1981), the appellate court is required to make an independent determination of the ultimate fact issue of discrimination in Title VII actions, but is bound by subsidiary fact determinations which are not clearly erroneous. *Id.* at 390–391. The findings of the district court that Welch's supervisor told her that as a woman doctor she would be unable to work for him and demanded to know, once she had received her Ed.D., when she would leave her employment are supported by the record and do not leave this court with the conviction that a mistake has been committed. Therefore, the district court's finding of constructive discharge must be affirmed.[4] A reasonable person would certainly resign employment after being ordered to leave.

■ Once Welch successfully presented a prima facie case of discrimination, the burden shifted to defendant to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). Although *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), announced after the district court decision in this case, changed the prior Fifth Circuit rule and held that it is not the burden of persuasion which shifts but rather an intermediate evidentiary burden, the district court result remains valid. Defendant satisfies this *Burdine* requirement if his "evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Id.* 450 U.S. at 254, 101 S.Ct. at 1094, 67 L.Ed.2d at 216. In response to plaintiff's sex discrimination claim, defendant assert-

ed that plaintiff departed voluntarily. In support of this assertion, defendant presented evidence that Welch desired to do cancer research, an endeavor not possible at the Marine Science Institute. Although this explanation initially appears satisfactory to shift the burden back to plaintiff to provide further proof that this reason was a mere pretext for discrimination, Welch's prima facie case itself provides this proof. Welch demonstrated in her prima facie case that the personnel manager and her supervisor were informed that her departure was not voluntary yet they took no action to correct this belief. This evidence, in conjunction with plaintiff's evidence of good work performance and defendant's total lack of testimony of poor work performance or failure to get along with other employees, establishes the pretextual nature of defendant's contention.[5]

Defendant finally appeals what it characterizes as a legal duty on the part of defendant to inquire into the voluntary nature of plaintiff's resignation. This ground for appeal is easily disposed with since the district court imposed no such requirement. Instead, the court simply implied that the defendant's position that Welch was not forced to leave was inconsistent with lack of inquiry about her written statements in their employment records that she was so forced. As stated above, the credibility of this Court would be strained beyond the breaking point to believe that any competent employee under the misapprehension that she was being forced to resign would not be corrected in this belief by her superiors if she expressed such, as here, in writing. The district court finding simply points out the weakness of defendant's argument.

4. Additional support for the constructive discharge finding is found in the subsidiary finding that the Marine Science Institute personnel director knew of Welch's sex discrimination claim at least a month prior to her departure but did nothing to rebut her claim.

5. In the words of *Burdine,*

[a] satisfactory explanation by the defendant destroys the legally mandatory inference of discrimination arising from the plaintiff's initial evidence. Nonetheless, this evidence and

inferences properly drawn therefrom may be considered by the trier of fact on the issue of whether the defendant's explanation is pretextual. Indeed, there may be some cases where the plaintiff's initial evidence, combined with effective cross-examination of the defendant, will suffice to discredit the defendant's explanation.

*Id.* 450 U.S. at 255, n.10, 101 S.Ct. at 1095, n.10, 67 L.Ed.2d at 216, n.10. This is such a case.

Welch also appeals the district court decision, alleging insufficiency of both damage and attorney fee awards. This Court finds both points of error without merit and hence will not interfere with the district court decision as to these two matters. In regard to damages, we begin with the proposition that the amount of damages should only be set aside if it is determined to be clearly erroneous. Rule 52(a), F.R. Civ.P. *Neal v. Saga Shipping Co., S.A.*, 407 F.2d 481, 487 (5th Cir.), *cert. denied*, 395 U.S. 986, 89 S.Ct. 2143, 23 L.Ed.2d 775 (1969). The district court record indicates that the grant under which Welch was paid expired on July 31, 1977. The district court, therefore, awarded backpay from the date of constructive discharge to this date. We must agree with the lower court that it is simply a matter of speculation whether Welch would have been shifted to another grant after July. The award of damages must, therefore, be upheld.

Despite the novel definition of contingent fees propounded by Welch's attorney,[6] the attorney fee award must also be upheld. The district court has broad discretion in awarding attorney fees; the amount will be altered only in the event of a clear showing of abuse of discretion. *Cappel v. Adams*, 434 F.2d 1278, 1280 (5th Cir. 1970). The district court awarded fees for the number of hours claimed by the attorney. The attorney now argues that the hourly fee could have been higher, but this argument does not satisfy the court that an abuse of discretion has been committed.

AFFIRMED.

---

6. Plaintiff's attorney claims that in addition to an agreement that the attorney would receive a court ordered fee as payment, his client agreed to pay $20 per month to help defray expenses. Apparently this amount was never paid, so the attorney now argues that this court should award him one-third more than his usual fee because of the "contingent" nature of the fee agreement. This allegation is completely without merit.